In re the Matter of Janice
**WINDER, Petitioner,**

v.

**Carl KLEINFELD, Respondent.**

**File No. CS08–02347.**

Family Court of Delaware,
Sussex County.

Submitted: Aug. 12, 2009.
Decided: Jan. 13, 2010.

Ancillary Decision and Order—Property Division, Alimony, Costs, and Attorney's Fees.

Ashley Oland, Esquire, Law Office of Edward C. Gill, P.A., Georgetown, DE, Attorney for Janice Winder.

Manaen Robinson, Esquire, Law of Office of Kim DeBonte, Georgetown, DE, Attorney for Carl Kleinfeld.

## OPINION

HENRIKSEN, J.

On August 12, 2009, the Court held a hearing to consider the remaining matters ancillary to the above-named parties' divorce, namely property division, alimony, attorney's fees and costs.[1] A prior Order of this Court issued April 07, 2009, ordered Husband to pay interim alimony in the amount of $1,100.00 per month. In coming to its decision, the Court heard the testimony of both of the parties. The parties submitted post-trial memorandums setting forth their proposed findings of fact and order, together with supplementary exhibits concerning expenses and credit card bills.

### PROPERTY DIVISION

In a proceeding for divorce, the Court is directed to equitably divide, distribute, and assign the marital property between the parties without regard to marital misconduct in such proportions as the Court

---

1. Pseudonyms have been substituted for the names of the parties pursuant to Supreme Court Rule 7(d).

deems just after considering all relevant factors, including those factors specifically set forth in 13 Delaware Code Section 1513.

*The length of the marriage:*

The parties were married September 29, 1974, separated June 01, 2006, but with an actual physical separation from the home in April 2008, and were divorced on October 23, 2008, thereby concluding a lengthy marriage of 34 years and 3 weeks.

*Any prior marriage of the party:*

Both parties were previously married, and both prior marriages ended in divorce. Husband had no children by his prior marriage. Wife had a son by her prior marriage, who is now 40 years of age. By the Court's calculations, the son lived as a minor with the couple during their marriage from about age 5. Wife received no support from the son's natural father during the roughly 13 years of the child's minority from age 5 to age 18. Husband will therefore receive 5 percentage points in the Court's overall distribution of property based upon his providing support for Mother's son not supported by the biological father.

*The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties:*

Wife is 68 years old, having been born February 18, 1941. She is presently unemployed, has seldom been employed during the marriage, and the Court certainly would not expect her to be employed at this time given her age and multiple medical conditions. Wife suffered a double mastectomy during the marriage. She has bleeding ulcers, irritable bowel syndrome, cervical spondoliosis, Epsteins Bar, and rheumatoid arthritis. Wife has minimal if any vocational skills, noting that she does not know how to operate a computer or even a cell phone. Wife has a Master of Arts in the area of art history and art criticism. However, she has not utilized this degree since she received it in 1964. Wife's sole income is from dividends of approximately $2,000.00 to $2,500.00 per year from stocks she inherited from her father. As of December 31, 2008, those stocks had a value of $97,592.00. Wife also has an IRA Account which, pursuant to the agreement of the parties, was initiated during the marriage in May 2007. The parties agreed that Wife could take $200.00 from the parties' joint bank account and apply it to Wife's separate IRA each month. The record indicates that Wife placed considerably more money than the $200.00 per month in the account. By the parties' agreement, $2,400.00 of that amount (12 months × $200.00 per month) would be Wife's sole property. At one time the account had a balance of approximately $8,865.95. Wife, however, has used $2,200.00 of that amount, withdrawn in separate withdrawals of $1,000.00 and $1,200.00 for her living expenses, repairs she agreed to make for her son's home which Wife rents, and in part for Wife to be able to pay her son $300.00 per month rent.

Husband is 64 years old, having been born December 07, 1944. He makes between $80,000.00 and $83,000.00 per year. However, in order to make that income, Husband has for the past many years worked 80 hours per week. He makes approximately half his income working at Christiana Care, and he makes the other half of his income working for the State of Delaware. Husband is a social worker with a Master's Degree in community counseling. Husband is in good health, except having recently been diagnosed with some skin cancer. It is critical in this case to note that Husband would like to

retire at age 65. There were times during the marriage he told Wife that he would like to work until 70. The Court does not find it unusual that as Husband approaches his possible retirement age of 65, he is giving greater consideration to retiring at age 65, or at least cutting back his hours. Husband's employment at Christiana Care has existed over the past 10 years. Husband's only other major asset, which is a marital asset, is his 401k Associated Pension Plan with Christiana Care. The December 31, 2008 statement for Husband's plan shows a balance of $25,094.48.

Husband will also qualify for a State of Delaware pension. Wife's share in Husband's pension will be recognized pursuant to a Qualified Domestic Relations Order, Allocation Order, or similar type of Order paying Wife her share if, as, and when Husband receives his share using a Cooper Formula with a 50% multiplier.[2]

Given the considerable difference in the parties' present income abilities, along with Husband's excellent health condition as compared to Wife's terrible health condition, it would not be unusual for the Court in many cases to consider balancing this disparity by awarding wife 30 percentage points in the overall distribution of assets.

Wife provided case law to the Court in support of her position for such a 70/30% property division split. Wife argues *I.H.*

v. *G.H.*, a case in which both parties were in good health, and the husband earned ten times the wife's income, the Court awarded a 70/30% property division split.[3] Wife notes *In re the Marriage of S.L.S,* a case in which the husband earned ten times Wife's income and the husband was in good health and the wife was in poor health, the Court awarded a 70/30% property division split.[4] Wife also points out *R.H. v. A.R.H.*, a case in which the husband, who was in good health, had an earning capacity almost 9 times as much as the wife, who was in poor health, the Court awarded a 70/30% property division split.[5] Finally, Wife cites *F.W. v. D.W.*, a case in which the husband had a higher earning capacity than Wife and the husband was in good health and the wife was in poor health, and the Court awarded a 70/30% property division split.[6]

The Court has reviewed these cases and finds the instant case to be distinguishable. In the current case, Husband is 64 years old and nearing retirement age. In the cases Wife cites, the ages of the husbands are 44 years old,[7] 50 years old,[8] 59 years old,[9] and 51 years old [10] respectively. Husband in the case *sub judice* does not have the same future earning capacity length of time as the individuals in the cases cited by Wife. The case where Husband was 59 years old is also distinguishable because the Court gave considerable weight to the

---

2. *Jerry L.C. v. Lucille H.C.*, 448 A.2d 223 (Del. 1982).

3. *I.H. v. G.H.*, No. CN02–10682, 2005 WL 1420874 (Del.Fam.Ct. Jan. 10, 2005).

4. *In re Marriage of S.L.S. and P.J.S.*, No. CN90–9562, 2003 WL 22264043 (Del.Fam.Ct. Apr. 11, 2003).

5. *R.H. v. A.R.H.*, No. CN96–07647, 2006 WL 4043753 (Del.Fam.Ct. July 28, 2006).

6. *F.W. v. D.W.*, Del.Fam.Ct. (Del.Fam.Ct. Dec. 18, 2008), J. Henriksen.

7. *I.H. v. G.H.*, 2005 WL 1420874, at *1.

8. *In re Marriage of S.L.S.*, 2003 WL 22264043, at *1.

9. *R.H. v. A.R.H.* 2006 WL 4043753, at *1

10. *F.W. v. D.W.*, Del.Fam.Ct. (Del.Fam.Ct. Dec. 18, 2008), J. Henriksen.

"significant contributions" of Wife.[11]

In this case the Court cannot ignore the advanced age of both parties and the reasonable expectation that Husband should not be required to work 2 jobs for a total of 80 hours per week until he is 70. Wife's poor health limits, if not prevents, any options to her. Husband's good health at least gives him a choice of working and making more money or not. Given all of these factors, the Court is not inclined to award Wife 30 percentage points. However, the Court finds it equitable to award Wife 20 percentage points in the overall distribution of assets.

*Whether the property award is in lieu of or in addition to alimony:*

The award will be in addition to alimony.

*The opportunity of each for future acquisitions of capital assets and income:*

Wife has non-marital property consisting of stocks. As previously mentioned, these stocks had a value as of December 31, 2008, of $97,592.00. If need be, Wife can invade this asset to help provide for her necessary needs, although Wife indicated a desire to not invade these assets because she would like to keep them for her son and/or her grandson's college education. Husband has no such asset upon which he can draw upon or invest other than his 401 retirement plan already accounted for in the division of marital assets with a balance of $25,094.48. Between these two parties, the only party with any appreciable savings, except for what the parties will receive upon the sale of their marital real estate, is Wife with her stocks. Again, Husband has the good fortune of having good health. With that good health, Husband can continue to work and build upon his savings, while Wife has no

such opportunity to build upon her account. Considering these trade-offs, the Court is not inclined to favor either party with additional percentage points.

*The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker, husband, or wife:*

Although Wife would argue that Husband has dissipated assets over the period of the parties' marriage by poorly managing bank accounts, which Wife eventually took over, the Court also recognizes that this dissipation is minimal when compared to Husband's working 80 hours a week in two separate jobs to provide for Wife, and her son. Wife maintained the marital property while Husband was working. She also did an excellent job in maintaining the regular payment of the parties' bills, including managing extra payments on the mortgage so that the real estate now owned by the parties is debt free. In the Court's opinion, both parties have provided equally in this marriage.

Although Wife raised some thought in the Court's mind that Husband, late in the parties' marriage, was foolishly spending money on his cousin, Julie, who Wife believed was Husband's girlfriend, the proof did not rise to the necessary level for the Court to adopt that theory. Although there was an e-mail poem sent by Husband to Julie of a somewhat amorous nature, there was no proof that Husband had been seeing Julie on a regular basis, that Husband was going Trinidad to live with Julie, or that Julie was coming to the United States to live with Husband. Husband testified that he was simply assisting his cousin as well as other relatives in

11. *R.H. v. A.R.H.*, 2006 WL 4043753.

paying some of their expenses, all of whom are poor and live in other countries.

### The value of the property set apart to each party:

The parties previously divided between them the automobiles, their regular bank accounts, and their personal property. They have agreed that there should be no attribution of value for the division of these particular assets.

Wife had an IRA account with a balance of $8,865.95. The Court finds it appropriate that she paid out of this account for her own reasonable living needs a total sum of $2,200.00. This would leave the sum of $6,665.95. From this sum, the Court deducts $2,400.00 as the amount that the parties agreed that Wife would have as her sole and separate property upon separation. This leaves $4,256.95 in the account which the Court will award to Wife as her sole and separate property.

The Court hereby awards Husband as his sole and separate property his work related 401k plan, attributing Husband with the value of $25,094.00, which is the closest value the Court had as of December 31, 2007.

Husband is seeking reimbursement for alleged payments of $2,500.00 cash to unidentified illegals who would only accept cash. According to Husband, this money was spent for the acquisition of two garage doors, and also to have the cottage scraped and painted. Unfortunately, Husband's testimony that the monies were withdrawn in August and September of 2007 does not correspond to the reality that the property was not improved until after Husband received notice from the City of Georgetown about necessary repairs in September 2008. The Court can therefore not award Husband this credit since there has been unsatisfactory proof thereof.

### The economic circumstances of each party at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the party with whom any children of the marriage will live:

Given the parties have agreed to list the home for sale, and that any children of minority are now grown, there is no need for the Court to consider who might continue to live in the former marital home. At the time the parties separated, Husband was in total control of the finances by having a regular income, while Wife was unemployed. At the same time, Wife had her stocks available to her, which she chose not to invade. Rather than sell some of her stocks, Wife chose to sell some of her personal clothing and jewelry for minimal amounts in order to be able to pay her bills. Husband was getting paid regularly. He also has been paying wife interim alimony of $1,100 per month since April 2009. The Court sees no need to make any percentage adjustment to reach an equitable balance of this factor.

### Whether the property was acquired by gift, except those gifts excluded by subsection (b)(1) of this section:

This section is not applicable.

### The debts of the parties:

The parties have agreed the debts to Citibank, Sears, Wilmington Trust Company, and Macy's are the sole and separate debts of Husband, all having been incurred post-separation. There is also a debt owed to the State of Delaware and the IRS. Although Husband attempts to argue Wife should share some of the additional tax burden he incurred because she would not sign a joint return with him, Husband failed to give Wife enough advance oppor-

tunity to make that decision. Furthermore, there was a definite lack of trust by Wife in how Husband was spending money which would have given Wife reason not to join in a tax return with Husband for 2007. Husband shall therefore have the sole responsibility of his Federal and State of Delaware income taxes owed on his 2007 returns.

### Tax consequences:

Except for the issue of alimony, which the Court will address next, the Court is not aware of any tax consequences involving the property division. Since the Court's Order will balance the equities in this case from the distribution of the proceeds of sale of the real estate, there should be no need for either party to make transfers out of their 401K and IRA accounts to the other.

### CONCLUSION

■ Having reviewed all of the factors, and noting the parties will eventually realize proceeds from the sale of their former marital real estate, now listed at $325,000.00, the Court believes an overall distribution of assets of 65/35% favoring Wife is fair and equitable. Presently, Wife has marital assets designated from the IRA account of $4,465.95, and Husband has his 401k account valued at $25,094.48. The combination of these assets totals $29,560.43. For Wife to have 65% of the amount of $29,560.43, it is necessary for Husband to pay to Wife $14,821.17, which, if added to the $4,465.95 Wife already has, would give Wife her 65% share of $19,078.12. Rather than create possible tax disadvantage circumstances by compelling Husband to disburse certain sums out of his 401k plan, the Court will require Husband to pay this amount of $14,821.17

to Wife out of his share from the distribution of the sale of the marital real estate.

Upon the sale of the marital real estate, after deducting the normal settlement related expenses and transfer taxes, the net proceeds of sale will be distributed 65/35% favoring Wife. Out of Husband's 35% distribution, Wife shall receive the aforesaid sum of $14,821.17.

Husband shall be responsible for the preparation and costs to prepare the necessary QDRO, Allocation Order, or similar Order to protect Wife's interest in Husband's State of Delaware pension as more fully previously explained.

### ALIMONY

### Legal Standard

Title 13, section 1512 of the *Delaware Code* states as follows:

A party may be awarded alimony only if he or she is a dependent party after consideration of all relevant factors contained in subsection (c) of this section in that he or she:

(1) Is dependent upon the other party for support and the other party is not contractually or otherwise obligated to provide that support after the entry of a decree of divorce or annulment;

(2) Lacks sufficient property, including any award of marital property made by the Court, to provide for his or her reasonable needs; and

(3) Is unable to support himself or herself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that he or she not be required to seek employment.[12]

In determining the amount of alimony to be awarded, if any, the Court is to consid-

---

**12.** Del.Code Ann. tit. 13, § 1512(b) (1999).

er the following factors, as outlined in Title 13, Section 1512(c) of the Delaware Code:

(1) *The financial resources of the party seeking alimony, including the marital or separate property apportioned to him or her, and his or her ability to meet all or part of his or her reasonably needs independently;*

After reviewing her expenses, the Court finds that Wife's reasonable monthly expenses are $2,563.70.[13] The Court deducted from Wife's expenses $50.00 per month for groceries and $100.00 per month for household items. The Court added to Wife's expenses $300.00 per month for rent, $7.50 per month for water and sewer, $15.00 per month for garbage, $61.33 per month for electricity, $150.00 per month for oil, $65.00 per month for cable television, $5.00 per month for a telephone, $10.00 per month for household items, $50.00 per month for vacation, and $15.00 per month for entertainment expenses.[14]

As per the parties Rule 52(d) Pre–Trial stipulations, Wife will be attributed with $2,500.00 per year in income. While attributing Wife with this annual income, according to the attached Fin Plan,[15] after tax considerations, Wife has a monthly deficit of $2,343.00.[16]

(2) *The time necessary and expense required to acquire sufficient education or training to enable the party seeking alimony to find appropriate employment;*

Because of Wife's age and health concerns, the Court does not expect Wife to obtain employment at this time.

(3) *The standard of living established during the marriage*

The parties appeared to have lived within their means during their marriage.

(4) *The duration of the marriage*

As stated in the Property Division section, the parties were married for 34 years and 3 weeks. Because the parties have been married for more than twenty years, there is no limit to the length of time Wife may receive alimony from Husband so long as she does not remarry or cohabitate within the meaning of Delaware law.[17]

(5) *The age, physical and emotional condition of both parties*

Husband is 64 years old and Wife is 68 years old. Husband is currently in good physical condition but has recently been diagnosed with skin cancer. Wife suffers from Epstein Barr, allergies, spinal scoliosis, hypoglycemia, rheumatoid arthritis, anemia, weight loss, cataracts, insomnia, mild emphysema, palpitations, high cholesterol, and gastrointestinal problems.

(6) *Any financial or other contribution made by either party to the education, training, vocational skills, career or earning capacity of the other party*

Neither party contributed to the education, training, vocational skills, career, or earning capacity of the other party.

(7) *The ability of the other party to meet his or her needs*

After reviewing his expenses, the Court finds that Husband's reasonable monthly

---

**13.** *See* Exhibit A.

**14.** *See* Exhibit A for a more detailed summary of the Court's calculations.

**15.** The Fin Plan is a computer program designed to assist the Court with alimony awards by calculating the potential tax impli-

cations of the award for both the payor and the recipient spouse.

**16.** *See* Exhibit C, line 18.

**17.** Del.Code Ann. tit. 13, § 1512(d) (1999).

expenses are $4,232.00.[18] Husband claimed $900.00–$1,400.00 for rent and the Court awarded him $600.00. Husband claimed $0–$300.00 for gas expenses and the court awarded him $0. The Court deducted from Husband's expenses $88.00 per month for water, sewer, and garbage, $85.00 per month for telephone expenses, $75.00 per month for clothing, $40.00 per month for medical insurance, $40.00 per month for out of pocket medical expenses, $25.00 per month for entertainment, $27.00 per month for automobile repairs and maintenance, $43.00 per month for automobile insurance, $150.00 per month for attorney's fees, $156.00 per month for the Citi Financial bill, and $204.00 per month for the Visa bill. Husband also claimed $1,500.00 in one time household maintenance and repairs. The Court will allow Husband to deduct $100.00 per month for household maintenance and repairs.[19]

The parties' Rule 52(d) Pre–Trial Stipulation attributes husband with $79,000.00 in income per year based on Husband working 80 hours per week. The Superior Court of Connecticut has calculated alimony in a case in which the husband worked one full time and two part time jobs.[20] The Court found that it was "not appropriate to base an alimony order upon all of the current earned income of the defendant," because it was the result of an "inordinate seventy-five hours of work per week." [21] This Court similarly finds that it would be inequitable to base an alimony order on the income Husband earns during an 80 hour work week.[22] Instead, the Court will calculate Husband's income based on a 60 hour work week and attribute Husband with $59,250.00 in income per year.[23] While attributing Husband with this annual income, he has a deficit of $579.00 per month.[24]

(8) *Tax consequences*

Husband's alimony payments to Wife are deductions from his taxable income. Any alimony received by Wife is taxable income.

(9) *Whether either party has foregone or postponed economic, education, or other employment opportunities during the course of the marriage*

Testimony was received by the Court during trial that Wife stayed at home with the parties' children instead of working.

(10) *Any other factor which the Court expressly finds is just and appropriate to consider*

The Court does not find that there are any other factors that are just or appropriate to consider.

### Findings and Conclusions

Based upon the evidence reviewed above, the Court finds that Wife cannot meet her own reasonable needs and that she is dependent upon Husband for support. The Court hereby determines that Husband shall pay to Wife alimony in the amount of $1,079.00[25] on the first day of each month, commencing February 1, 2010. Wife's future alimony will be forfeit-

18. *See* Exhibit B.

19. *See* Exhibit B for a more detailed summary of the Court's calculations.

20. *Steward v. Steward*, No. FA030127830, 2004 WL 2167035 (Conn.Super. Aug. 26, 2004).

21. *Id.* at *1.

22. *Id.* at *3.

23. The Court came arrived at $59,250.00 by multiplying $79,000.00 by 6/8.

24. *See* Exhibit C, line 18.

25. *See* Exhibit D, line 7.

ed only if either party dies or if Wife begins cohabiting with another individual or remarries.[26]

The Court is aware that this alimony obligation calculated using a 60 hour work week, will leave Husband with a deficit each month. Wife, however, also has a significant deficit each month. Because there is insufficient income to enable both parties to avoid having a deficit, the Court's Order directs the parties to equitably share this shortfall.[27] With an alimony order of $1,079.00 per month, both parties will have a shortfall of $1,328.00 per month.[28]

Alimony may be modified if there is a "real and substantial change of circumstances."[29] Retirement of the spouse paying alimony has qualified as a real and substantial change of circumstances.[30] The Court, however, will not consider Husband's retirement to be grounds for modification under the real and substantial change in circumstances analysis until he reaches the age of 67.

The Court has received evidence that Wife may qualify for Social Security benefits, but she has not yet applied for and is not currently receiving benefits. The Court would consider modifying the amount of alimony Husband is required to pay Wife if Wife is determined to be eligible for Social Security. Wife is obligated to timely seek this eligibility. Because neither party has provided this information to the Court, this factor has not been incorporated into the Court's reasoning, and may give the Court reason to adjust the Order.

Also, the Court understands the parties entered into a post-divorce stipulation wherein they agreed Wife would be covered under Husband's medical benefits with Christiana Care. Apparently, however, Blue Cross–Blue Shield, who funds the Christiana Care plan, has not agreed to accept that agreement. The parties and their attorneys are encouraged to make joint contacts with both Christiana Care and Blue Cross to pursue medical and hospitalization coverage for Wife. The Court's decision, especially as to alimony, is being made with the assumption Wife will be covered. If it turns out Wife is not covered, the Court will consider an amendment increase to Wife's monthly alimony to provide for medical and health insurance coverage, or maintaining a self-insured coverage plan by depositing additional sums into a savings account.

### ATTORNEYS FEES AND COSTS

Each party shall have 10 days from the mailing date of this Order to make any request for attorney's fees and costs they feel appropriate. Any such request shall be accompanied with a brief memorandum noting the basis of the request as well as the appropriate affidavit. Each party shall then have 10 days form receipt of any such request to file a response.

IT IS SO ORDERED.

### EXHIBIT A

| Item | Wife's Claimed Expense | Wife's Allowed Expense |
| --- | --- | --- |

**26.** Del.Code Ann. tit. 13 § 1512(g) (1999).

**27.** *J.P.B. v. R.P.B.*, No. CN78–06700, 2004 WL 2334225 (Del.Fam.Ct. May 5, 2004).

**28.** *See* Exhibit D, line 18.

**29.** Del.Code Ann. tit. 13, § 1519(a)(4) (1999).

**30.** *Smith v. Smith*, No. 825–86, 1994 WL 814265 (Del.Fam.Ct. Feb. 24, 1994).

## EXHIBIT A

| | | |
|---|---|---|
| Rent | $ 300.00 | $ 600.00 [31] |
| Water and Sewer | $ 67.50 | $ 75.00 [32] |
| Garbage | $0 | $ 15.00 [33] |
| Electric | $ 51.67 | $ 113.00 [34] |
| Oil | $ 200.00 | $ 350.00 [35] |
| Cable Television | $0 | $ 65.00 [36] |
| Telephone | $ 30.00 | $ 35.00 [37] |
| Household Items | $ 35.00 | $ 45.00 [38] |
| Groceries | $ 350.00 | $ 300.00 |
| Clothing | $ 50.00 | $ 50.00 |
| Out of Pocket Medical Expenses | $ 100.00 | $ 100.00 |
| Laundry and Dry Cleaning | $ 20.00 | $ 20.00 |
| Toys and Presents | $ 25.00 | $ 25.00 |
| Cosmetics and Toiletries | $ 40.00 | $ 40.00 |
| Hobbies | $ 35.00 | $ 35.00 |
| Barber and Hairdresser | $ 35.00 | $ 35.00 |
| Newspaper and Magazine Subscriptions | $ 26.00 | $ 26.00 |
| Charitable and/or Religious Donations | $ 15.00 | $ 15.00 |
| Vacation | $0 | $ 50.00 |
| Entertainment and Misc. | $ 35.00 | $ 50.00 |
| Automobile Repairs and Maintenance | $ 85.00 | $ 85.00 |
| Automobile Insurance | $ 78.06 | $ 78.00 |
| Gasoline | $ 100.00 | $ 100.00 |
| Automobile Registration | $ 6.70 | $ 6.70 |
| Pet Care | $ 50.00 | $ 50.00 |
| Attorney's Fees | $ 100.00 | $ 100.00 |
| Household Maintenance and Repairs | $ 200.00 | $ 100.00 |
| **TOTAL** | **$2,034.93** | **$2,563.70** |

31. Wife originally claimed $500.00 for rental expenses and now seeks $300.00. The Court finds $600.00 is a fair amount for both parties' rental expenses.

32. Wife originally claimed $75.00 for water and sewer expenses, and the Court finds this claim was reasonable.

33. Wife originally claimed $15.00 for garbage expenses, and the Court finds this claim was reasonable.

34. Wife originally claimed $175.00 for electric expenses, and the Court found $113.00 was reasonable.

35. Wife originally claimed $350.00 for oil expenses, and the Court finds this claim was reasonable.

36. Wife originally claimed $65.00 for cable television, and the Court finds this claim was reasonable.

37. Wife originally claimed $35.00 for a telephone, and the Court finds this claim was reasonable.

38. Wife originally claimed $45.00 for household items and the Court finds this claim was reasonable.

## EXHIBIT B

| Item | Husband's Claimed Expense | Husband's Allowed Expense |
|---|---|---|
| Rent | $900.00–$1,400.00 | $600.00 [39] |
| Water | $50.00 | $62.00 [40] |
| Sewer | $50.00 | See footnote 2 |
| Garbage | $50.00 | See footnote 2 |
| Electric | $150.00–$200.00 | $150.00 |
| Gas | $0–$300.00 | $0 [41] |
| Oil | $153.00 | $153.00 |
| Cable Television | $60.00 | $65.00 [42] |
| Telephone | $120.00 | $35.00 [43] |
| Household Items | $50.00 | $50.00 |
| Groceries | $300.00 | $300.00 |
| Clothing | $175.00 | $100.00 |
| Medical Insurance | $500.00 | $460.00 [44] |
| Out of Pocket Medical | $80.00 | $40.00 |
| Laundry and Dry Cleaning | $50.00 | $50.00 |
| Toys and Presents | $20.00 | $20.00 |
| Cosmetics and Toiletries | $20.00 | $20.00 |
| Hobbies | $60.00 | $60.00 |
| Barber and Hairdresser | $30.00 | $10.00 [45] |
| Newspaper and Magazine Subscriptions | $3.00 | $3.00 |
| Charitable and/or Religious Donations | $15.00 | $15.00 |
| Vacation | $83.00 | $83.00 |
| Entertainment and Misc. | $100.00 | $75.00 |
| Automobile Repairs and Maintenance | $77.00 | $50.00 |
| Automobile Insurance | $123.00 | $80.00 |
| Gasoline | $400.00 | $400.00 |

39. The Court finds that $600.00 is fair amount for rent for both Husband and Wife.

40. The Court examined the utility bill Husband provided as Exhibit 2. The bill which totaled $185.19 had a billing period of 3 months. The Court divided $185.19 by 3 and calculated the monthly expense Husband incurs to pay these three utilities per month as approximately $62.00 per month.

41. Husband did not provide the Court with any documentation regarding this expense.

42. Husband and Wife will be allowed the same expense for cable television.

43. Husband and Wife will be allowed the same expense for a telephone.

44. The Court examined the Christiana Care Pay Statement Husband provided as Exhibit 7. Husband's Year to Date income as of August was $3,694.74. The Court divided $3694.74 by 8 and calculated the monthly expense Husband incurs to pay for health insurance as approximately $460.00.

45. Husband testified during trial that his claimed expense of $30.00 per month for barber expenses was for razors to shave his head. The Court finds $30.00 per month to be excessive and awards Husband $10.00 per month.

| | | |
|---|---|---|
| Attorney's Fees | $250.00 | $100.00 |
| Life Insurance | $30.00 | $30.00 |
| IRS | $500.00 | $500.00 |
| 2007 State Tax Obligation | $100.00 | $100.00 |
| Citi Financial | $206.00 | $50.00 [46] |
| Visa | $300.00 | $96.00 |
| Lawn Care | $75.00 | $75.00 |
| Sears Credit Card | $300.00 | $300.00 |
| Household Maintenance and Repairs | $1,500.00 | $100.00 |
| **TOTAL** | $4,886.00 | $4,232.00 |

## EXHIBIT C

### AFTER–TAX CASH—HIGHLIGHTS (Monthly Amounts) 2009

| | Husband | Wife |
|---|---|---|
| 1 Salary | 4,938 | 0 |
| 2 Self–Employment Income | 0 | 0 |
| 3 Interest and Dividends | 0 | 208 |
| 4 Other Cash Income | 0 | 0 |
| **5 Total Cash Income** | **4,938** | **208** |
| | | |
| SUPPORT | | |
| 6 Child Support Paid | 0 | 0 |
| 7 Spousal Spt (Maintenance/Alimony) | 0 | 0 |
| 8 Non–Taxable Maintenance | 0 | 0 |
| | | |
| **DEDUCTIONS FROM CASH** | | |
| 9 Federal Income Tax | (689) | 0 |
| 10 Soc Sec/Self Employment Tax | (378) | 0 |
| 11 State & & Local Income Tax | (218) | 0 |
| 12 Retirement Contributions | 0 | 0 |
| 13 Other Cash Items | 0 | 0 |
| | | |
| 14 Cash Before Child Support Received | 3,653 | 208 |
| 15 Child Support Received | 0 | 0 |
| | | |
| **16 Cash to Meet Living Expenses** | **3,653** | **208** |
| 17 Required Cash (Budget) | 4,232 | 2,564 |
| 18 Over/Under Budget | (579) | (2,356) |
| 19 Share of Total Cash | 94.6% | 5.4% |

## EXHIBIT D

### AFTER–TAX CASH—HIGHLIGHTS (Monthly Amounts) 2009

| | Husband | Wife |
|---|---|---|
| 1 Salary | 4,938 | 0 |
| 2 Self–Employment Income | 0 | 0 |
| 3 Interest and Dividends | 0 | 208 |
| 4 Other Cash Income | 0 | 0 |
| **5 Total Cash Income** | **4,938** | **208** |

**46.** It is the Court's understanding that Husband incurred this debt post-separation in order to purchase a Corvette. Therefore, the Court is only allowing Husband to claim $50.00 per month for this expense.

**EXHIBIT D**

**SUPPORT**

| | | |
|---|---|---|
| 6 Child Support Paid | 0 | 0 |
| 7 Spousal Spt (Maintenance/Alimony) | (1,079) | 1,079 |
| 8 Non–Taxable Maintenance | 0 | 0 |

**DEDUCTIONS FROM CASH**

| | | |
|---|---|---|
| 9 Federal Income Tax | (419) | (30) |
| 10 Soc Sec/Self Employment Tax | (378) | 0 |
| 11 State & & Local Income Tax | (158) | (21) |
| 12 Retirement Contributions | 0 | 0 |
| 13 Other Cash Items | 0 | 0 |
| 14 Cash Before Child Support Received | 2,904 | 1,236 |
| 15 Child Support Received | 0 | 0 |
| **16 Cash to Meet Living Expenses** | **2,904** | **1,236** |
| 17 Required Cash (Budget) | 4,232 | 2,564 |
| 18 Over/Under Budget | (1,328) | (1,328) |
| 19 Share of Total Cash | 70.1% | 29.9% |